UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHUDAIDAD, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Civil Action No. 05-997 (PLF) |
| ) | |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.*, ) | |
| Respondents. ) | |

**PETITIONER'S OPPOSITION
TO MOTION TO STAY PROCEEDINGS PENDING APPEALS AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

This memorandum of points and authorities is respectfully submitted on behalf of Petitioner Khudaidad in opposition to Respondents' Motion to Stay Proceeding Pending Related Appeals.

**Procedural History**

Petitioner Khudaidad, who is currently being held by respondents virtually *incommunicado* at Guantánamo Bay, filed a petition for habeas corpus in this Court on May 18, 2005 (Docket No. 1). On June 3, 2005, respondents filed a motion to stay these proceedings pending resolution of all appeals in In re Guantanamo Detainee Cases, Civil No. 02-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), and Khalid et al., Civil No. 04-1142, 355 F. Supp. 2d 311 (D.D.C. 2005). On December 8, 2005, through undersigned counsel, petitioner filed an amended petition for writ of habeas corpus. On December 16, 2005, the Court issued an Order, directing petitioner to show cause why this case should not be stayed, noting that "[i]f a stay is entered, it shall not relieve the government of any obligation to provide petitioner with a factual return from any Combatant

Status Review Tribunal, nor shall it bar the filing or disposition of any motion for emergency relief.

As set forth below, petitioner's motion for the issuance of a writ of habeas corpus should be granted, and respondents' motion for a stay denied. Alternatively, if a stay pending appeal in the related cases is entered, the Court should prohibit the transfer or removal of petitioner without prior notice to the Court and counsel, require respondents to produce a factual return within 30 days, and permit the filing of motions for emergency relief.

## Argument

**I. RESPONDENTS' MOTION FOR A STAY SHOULD BE DENIED.**

The writ of habeas corpus was designed to be a device enabling swift judicial consideration of and response to illegal detention. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." INS V. St. Cyr, 533 U.S. 289, 301 (2001), quoted in Rasul v. Bush, 124 S.Ct. 2686 (2004). The habeas statute requires that an application be presented fully to the court within a month of submission, unless good cause is shown, and that it be considered "forthwith." 28 U.S.C. § 2243. In addition to the statutory requirement of speedy consideration, in Rasul, the Supreme Court specifically directed the district court to consider the merits of habeas petitions brought by detainees at Guantanamo. See Rasul, 124 S.Ct. At 2699.

The respondents have not met their burden under the law to justify a stay in these proceedings. A party seeking a stay of judicial proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay

for which he prays will work damage to someone else." Dellinger v. Mitchell, 442 F.2d 782, 786 (D.C. Cir. 1971) (quoting Landis v. North American, 299 U.S. 248, 255 (1936)). As such, "[a]ny protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." Dellinger, 442 F.2d at 787; see also Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997). And in any event, "The right to proceed in court should not be denied except under the most extreme circumstances." Klein v. Adams & Peck, 436 F.2d 337, 339 (2d. Cir. 1971). Thus, as is the case here, when a party would be significantly injured by a stay, the movant must produce a significant showing of hardship—if the case moves forward—to balance that injury.

Here the government has made no such showing of hardship if the case proceeds with which to balance against the very real injury to petitioner. The respondents' main theme in favor of a stay is that judicial efficiency will be served by waiting to see if the Court of Appeals reverses Judge Green's decision in In re Guantanamo Detainee Cases. Any balancing of harms must begin with the undeniable fact that petitioner has been incarcerated virtually *incommunicado* for over three years without charge, access to counsel or fundamental minimal due process protections. In effect, a stay would virtually guarantee that petitioner would be forced to endure a continued lengthy indefinite detention under widely publicized and admittedly abusive conditions of confinement.

A stay would be wholly inconsistent with a long line of cases emphasizing that habeas cases must be handled expeditiously. Writs of habeas corpus are intended to afford a "swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391,

400 (1963) (internal quotations omitted); see also, e.g., Preiser v. Rodriguez, 411 U.S. 475, 496 (1973) ("the federal habeas statute provides for a swift, flexible, and summary determination."); Carafas v. LaValle, 391 U.S. 234, 238 (1968) (habeas review is designed "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); Stack v. Boyle, 342 U.S. 1, 4 (1952) ("Relief in this type of case must be speedy if it is to be effective.").

Petitioner is entitled, after years of detention, to seek the elemental relief of a habeas petition: respondents should either state their reasons for his detention, or release him. At a minimum, respondents should be ordered to identify the grounds for petitioner's detention.

A stay in this action would effectively defeat the paramount statutory and common law requirements that habeas petitions be considered immediately and would condemn petitioner to possibly illegal detention for many more months, if not indefinitely.

## II.   IF A STAY IS GRANTED, IT SHOULD BE NARROWLY TAILORED TO ADDRESS RESPONDENTS' CONCERNS AND OTHERWISE PROTECT PETITIONER'S RIGHTS.

A stay poses the risk that petitioner will continue to be deprived of his right to review of the grounds and conditions of his detention by an independent tribunal, not only during the pendency of a stay, but even after the stay terminates, during the period of time necessary to prepare petitioner's case for litigation. To the extent that a stay is warranted to address respondents' concerns while appeals in related proceedings are pending, any stay should be narrowly tailored to only those legitimate concerns. The Court should allow petitioner and his counsel to prepare petitioner's claim for presentation as soon as the stay is dissolved, and also to preserve

petitioner's rights to petition for other necessary and urgent relief, such as to ensure adequate medical care.

### 1. Respondents Should Be Enjoined from Transferring Petitioner While the Stay Is In Effect.

This Court has ruled in at least one other case that while a stay is in place, respondents shall be prohibited from transferring a detainee unless the Court and counsel are notified thirty days in advance of such removal or transfer.  See Mokit v. Bush, 374 F.Supp.2d 106 (D.D.C. 2005).  If a stay is entered in this case, the Court should require the government to provide such notice prior to any transfer or removal of petitioner, in order to prevent the harm that may come to petitioner as a result of a such a removal or transfer and to protect the status quo between the parties.

### 2. The Court Should Order Respondents to Produce a Factual Return Within Thirty Days.

Respondents have had years to determine the grounds for petitioner's detention, and throughout this entire time, respondents have not been limited in their treatment of petitioner by the rights afforded to virtually every other federal prisoner.  For example: (1) respondents have had unfettered access to petitioner for the purpose of interrogation; (2) respondents have had access to documentary evidence obtained without the requirements of probable cause or warrant; and (3) petitioner has not had counsel and respondents have not been required to cooperate or disclose findings with any counsel for petitioner.  In short, respondents have had utter and comprehensive control over petitioner and every other potential witness and document, and have not had to endure even the barest inconvenience associated with due process.  Having held

petitioner for more than three years, even if a stay is now entered, respondents should be required expeditiously to state the grounds for his continued detention.

Respondents have not provided petitioner's counsel with any information about Mr. Khudaidad or the allegations against him.  In addition, the record discloses nothing about petitioner's age or state of health, where, when, or why he was arrested, how he came to be detained at Guantánamo Bay, how long he has been held there, or even whether he has been declared an "enemy combatant."  Respondents' counsel have not provided the most basic, non-classified information about Khudaidad; has insisted on security clearance of counsel; and will not permit counsel to travel to Guantánamo Bay Naval Base unless and until government clearance has issued.  Petitioner's counsel has submitted all requested information in order to obtain a clearance, but has not yet been notified as to the status of her application.  Petitioner's counsel cannot effectively represent petitioner without access to the information provided in the factual return.  "Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." Abdulla Thani Faris Al-Anazi v. Bush, 370 F. Supp. 2d 188, 199-200 (D.D.C. 2005).

There is good reason to obtain basic information now.  The Wall Street Journal reported a year ago that U.S. military "[c]ommanders now estimate that up to 40% of the 549 current detainees probably pose no threat and possess no significant information." Christopher Cooper, Detention Plan: In Guantánamo, Prisoners Languish In a Red Sea of Tape, Wall Street Journal, Jan. 26, 2005, at A1. "Military officials at Guantánamo say they have specifically recommended the release of about 100 of those men." Id.

The burden of production on the respondents of a factual return is minimal.  In every

Guantanamo detainee case where respondents have been ordered to produce a factual return, the return has consisted of the record of proceedings before the detainee's Combatant Status Review Tribunal, or "CSRT".  By July 2005, a CSRT was conducted for every prisoner in the custody of the Department of Defense ("DOD") at Guantánamo.  See Jennifer K. Elsea, Leg. Atty., Am. Law Div., CRS Report for Congress: Detainee at Guantanamo Bay (July 20, 2005), at 2, available at http://www.fas.org/sgp/crs/natsec/RS22173.pdf.

A sampling of unclassified CSRT files for about 60 detainees can be viewed on the Internet as a result of a successful Associated Press Freedom of Information Act case. *See* http://wid.ap.org/documents/detainees/list.html (the files typically have name and country redacted).  A cursory review of any of these files shows that the government already has well organized factual files that it can produce quickly.  It makes no sense for the government to produce files, even in redacted form, to the Associated Press for viewing by the entire world and not produce a file to a petitioner's attorney.

Despite the government's references in other matters to the expenditures of its resources and logistical burden, the government has been able to comply with orders to provide factual returns in similar cases without issue and has been able to comply promptly, when ordered to do so.  See, e.g., Errachidi v. Bush, 05-CV-640, docket no. 15 (April 21, 2005 order entered by Sullivan, J., requiring government to make its return within seven days) and docket no. 16 (April 26, 2005 filing of factual return by Respondents).  Petitioner respectfully requests that this Court require that factual returns be filed within 30 days.

If this Court grants the respondent's request for a stay of proceedings in this case, requiring a

factual return is especially appropriate. As noted above, in considering a request for stay, the Court must balance the respective interests of the parties and the relative harm the stay would inflict. "Any protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." Dellinger, 442 F.2d at 787. Thus, if a court grants a stay, that court may specify protective conditions to balance the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal. Cooks v. Fowler, 459 F.2d 1269, 1272-73 & n.27 (D.C. Cir. 1971) (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal); see also City of Portland v. Federal Maritime Comm'n, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing the proponent of a stay in a case challenging shippers' exclusion of one city's port from service to "be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service among the ports involved pending final review and determination"); Scott v. Scott, 382 F.2d 461, 462 (D.C. Cir.1967) (discussing a stay of execution of judgment conditioned upon support payments).

Where the condition imposed on the proponent of the stay is "'neither heavy nor unexpected,'" imposing a protective condition is well within a court's discretion. Cooks, 459 F.2d at 1273 (quoting Bell v. Tsintolas Realty Co., 430 F.2d 474, 482 (D.C. Cir. 1970) ("[w]e have little doubt that [a court] may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation")). Accordingly, the Court should:

> guard against depriving the processes of justice of their suppleness of adaptation to varying

conditions. Landis v. North American Co., 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); see also Clinton v. Jones, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case.").

Al-Oshan v. Bush, No. 05-cv-520 (D. D.C. Mar. 31, 2005) (Urbina, J.) (Order, Memorandum granting Motion for Stay).

If the pending appeals are resolved in favor of the detainees, counsel's access to the factual return now will improve judicial efficiency by "allow[ing] petitioner to begin preparing well in advance of any ruling by the Court of Appeals" and therefore present a complete application to the Court soon after the stay is lifted. See Al-Adahi v. Bush, No. 05-CV-280 (GK), slip op. At 2 & n.1 (D.D.C. Apr. 29, 2005). Such access will "ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." Kurnaz, No. 04-CV-1135 (ESH), 2005 WL 839542, at *1 (D.D.C. Apr. 12, 2005).

### 3. Petitioner Should be Permitted to Move for Emergency Relief.

As detailed above and in numerous news articles, there is substantial reason to fear that petitioner is being detained under extraordinarily harsh conditions. If a stay is issued, petitioner may need to challenge particular conditions of his confinement on an emergency basis. We respectfully request that any stay issued by the Court permit the filing and disposition of motions for such emergency relief. See Mokit, 374 F.Supp.2d 106.

9

## CONCLUSION

For the aforementioned reasons, petitioner respectfully requests that the Court enter the deny respondents' motion to stay these proceedings and grant petitioner's motion for the issuance of a writ of habeas corpus, or in the alternative, issue an order to show cause. If the Court grants respondents' motion for a stay, petitioner respectfully requests that the Court order respondents to provide counsel with petitioner's full factual return within thirty days, and allow for the filing and disposition of motions for emergency relief.

Date: _____                                                  Respectfully submitted,


                                                                          A.J. KRAMER

                                                                          FEDERAL PUBLIC DEFENDER

                                                                                    /s/

                                                                          _____
                                                                          MARY MANNING PETRAS
                                                                          Assistant Federal Public Defender

                                                                          625 Indiana Avenue, N.W., Suite 550
                                                                          Washington, D.C. 20004
                                                                          (202) 208-7500